**TO: Clerk's Office**
### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

**APPLICATION FOR LEAVE
TO FILE DOCUMENT UNDER SEAL**

**********************************
IN THE MATTER OF THE SEARCH OF
TWO MOBILE DEVICES VOUCHERED
UNDER NEW YORK CITY DEPARTMENT
OF INVESTIGATIONS VOUCHER
NUMBER PR21-149 AND PR21-054

21-MJ-1114
Docket Number

**********************************

SUBMITTED BY: Plaintiff____ Defendant____ DOJ ✓
Name:  Philip Pilmar
Firm Name:USAO EDNY
Address:   271 Cadman Plaza E
           Brooklyn, NY 11201
Phone Number: 718-254-6106
E-Mail Address:philip.pilmar@usdoj.gov

<u>INDICATE UPON THE PUBLIC DOCKET SHEET: YES_____ NO ✓</u>
**If yes, state description of document to be entered on docket sheet:**

_____

_____

_____

**A) If pursuant to a prior Court Order:**
Docket Number of Case in Which Entered:_____
Judge/Magistrate Judge:_____
Date Entered:_____

**B) If a <u>new</u> application,** the statute, regulation, or other legal basis that authorizes filing under seal

ongoing investigation
_____

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY <u>NOT</u> BE UNSEALED UNLESS ORDERED BY THE COURT.**

DATED:  Brooklyn                    , NEW YORK
        October 1, 2021
                              *Lois Bloom*
_____

**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE October 1, 2021
                                          DATE

**MANDATORY CERTIFICATION OF SERVICE:**
**A.)** ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation:_____; or **C.)** ✓ This is a criminal document submitted, and flight public safety, or security are significant concerns. (Check one)

October 1, 2021                    *Philip Pilmar*
DATE                               SIGNATURE

SPN:PP
F. #2021R00894

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH OF
A  BLACK LG TRACFONE MOBILE
TELEPHONE - FCC ID: ZNFL322DL -
SERIAL NUMBER: GPLGL322DCG32B
VOUCHERED UNDER NEW YORK
CITY DEPARTMENT OF
INVESTIGATIONS VOUCHER NUMBER
PR21-149 AND A BLACK SAMSUNG
MOBILE TELEPHONE WITH IMEI:
356327116572253 VOUCHERED UNDER
NEW YORK CITY DEPARTMENT OF
INVESTIGATIONS VOUCHER NUMBER
PR21-054

**TO BE FILED UNDER SEAL**

**APPLICATION FOR A
SEARCH WARRANT FOR
ELECTRONIC DEVICES**

Case No. 21-MJ-1114

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Dianna Oglio, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—

two electronic devices described in Attachment A—that is currently in law enforcement

possession, and the extraction from that property of electronically stored information

described in Attachment B.

2.      I am a Special Agent with the United States Department of Homeland

Security, Homeland Security Investigations assigned to the New York Violent Gang Task

Force. As such, I have been involved in investigations of street gangs, and I am familiar with the means and methods members of street gangs use to conceal their criminal conduct from detection by law enforcement authorities. I have over 10 years of law enforcement experience at the federal and local levels. I am a graduate of the Federal Law Enforcement Training Academy, the U.S. Army Criminal Investigation Command Special Agent Course, and the New York State Peace Officer Academy. I have participated in numerous arrests and executed numerous search warrants, including search warrants for the type of electronic information that is the subject of this application.

3.      The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1962 and 1963 (racketeering); 18 U.S.C. § 1952(a)(3) (use of facilities in interstate commerce with intent to promote, manage, establish, carry on, or facilitate the promotion of narcotics distribution and bribe receiving); and/or 18 U.S.C. § 371 (conspiracy to violate the Travel Act) (the "Subject Offenses") have been committed, are being committed, and will be committed by Terrae Hinds, Krystle Burrell, Michael Ross, Katrina Patterson, and others (the "Subject Individuals"), and that evidence of these offenses will be found during a search of the devices.

2

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5.      The property to be searched is: (1) a Black LG Tracfone Mobile Telephone -
FCC ID: ZNFL322DL – SERIAL NUMBER: GPLGL322DCG32B Vouchered Under New
York City Department of Investigations Voucher Number PR21-149 ("Target Device 1");
and (2) a Black Samsung Mobile Telephone with IMEI: 356327116572253 Vouchered
Under New York City Department of Investigations Voucher Number PR21-054 ("Target
Device 2," collectively the "Target Devices").  The applied-for warrant would authorize the
forensic examination of the Target Devices for the purpose of identifying electronically
stored data particularly described in Attachment B.

## PROBABLE CAUSE

I.      Background

6.      The United States Department of Homeland Security, Homeland Security
Investigations ("HSI") and the New York City Department of Investigation ("DOI") are
investigating the smuggling of contraband cell phones and narcotics by corrections officers
working at Rikers Island to members of the Blood Hound Brims (the "BHB" or the
"enterprise"), a street and prison gang that operates in New York City, upstate New York,
Pennsylvania, and elsewhere.

7.      Based on my training and experience, my investigation of this case to date,
including my debriefing of current and former members of the BHB, and my review of
reports from other law enforcement agents, I have learned the following, in sum and
substance and in part, concerning the BHB.

3

8.      The BHB is a faction of the Bloods street gang, which operates nationwide, and is under the New York Blood Brim Army ("NYBBA").  The NYBBA acts as a ruling body over multiple "Brim" sets, including the BHB, the 5-9 Brims, and the Mac Balla Brims, among others.  Members and associates of the BHB engage in narcotics trafficking and commit acts of violence, including murder, robbery, and assault, among other crimes.  The BHB, including its leadership, membership, and associates, constitute an "enterprise," as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engages in, and the activities of which affect, interstate and foreign commerce.  The enterprise constitutes an ongoing organization whose members function as a continuing unit for a common purpose of achieving the objectives of the enterprise.  The BHB, through its members and associates, engage in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving narcotics trafficking, in violation of Title 21, United States Code, Sections 841 and 846, and acts involving murder and robbery, in violation of the laws of the State of New York.

9.      The BHB operate throughout the greater New York City area, including the Eastern and Southern Districts of New York, and in neighboring states such as Pennsylvania. The enterprise includes members who are currently incarcerated, referred to as being "up top," and members who are "on the street."  The BHB has a hierarchical structure that is organized, in part, by New York City borough and that is maintained, in part, through the payment of dues into an account referred to as the enterprise's "kitty."  The dues paid to the enterprise's kitty include the proceeds of illicit activities undertaken by members of the BHB and designed to enrich the enterprise.

4

II.     Rikers Island

10.     Rikers Island is an island in the East River between Queens and the Bronx that is home to New York City's main jail complex.  Rikers Island contains a number of different facilities which are located in separate buildings, and those facilities each contain a number of different housing units.  Currently, approximately 6,000 individuals are incarcerated on Rikers Island.  Gang members are often placed in the same housing unit on Rikers Island in an attempt to avoid violence among different gangs.

11.     Incarcerated individuals at Rikers Island are not permitted to possess cell phones and must place any telephone calls through consensually monitored and recorded telephone lines of the New York City Department of Corrections ("DOC") Securus system.[1] Narcotics, like cell phones, are also contraband in a secure jail facility.  I have learned that

---

[1] To use the Securus system, each incarcerated individual records voice exemplars that enable the system to recognize the incarcerated individual's voice.  The incarcerated individual is then assigned a PIN permitting access to the system.  Although incarcerated individual are required to only use their own PIN to make outgoing telephone calls, in practice incarcerated individuals frequently use other individuals' PINs to disguise the source of their calls.  Because of the voice exemplars, however, the Securus system can typically recognize a given individual's voice even when he is improperly using another individual's PIN.  Incarcerated individual and the individuals they call also receive notice at the start of each call that their conversations using the Securus system are recorded and monitored. Included among the calls discussed herein are calls in which the incarcerated individual who is identified as a participant in the call improperly used another incarcerated individual's PIN to place the call.  In those instances, a member of the investigative team who is familiar with each of the incarcerated individuals' voices from having reviewed dozens of recorded calls for each has identified the incarcerated individual's voice.

5

contraband, including cell phones and narcotics, are extremely valuable in a jail and often sell for many multiples for their cost outside a correctional facility.

12.     Due to the need to promote the safety and security of fellow inmates and corrections officers, New York City Department of Correction regulations permit the search of an incarcerated individual's cell at any time for any contraband, including cell phones and narcotics.

13.     Based on my training and experience and information obtained from other law enforcement officers, I am aware that contraband cell phones are often smuggled into incarcerated individuals at Rikers Island by corrections officers, often in exchange for bribes. Contraband cell phones are extremely valuable in a jail because they allow incarcerated individuals, who normally are required to make calls only on recorded lines, to make telephone calls without being monitored by the DOC. Cell phones in a jail also allow incarcerated individuals to send text messages and use the internet, including looking up information on other incarcerated individuals' criminal cases. In addition, based on my training and experience and information obtained from members of the enterprise, I believe members of the BHB often use these contraband cell phones in furtherance of their racketeering activity, such as by using the calls to direct or receive instructions to further criminal activity.

III.     The Relevant Individuals

14.     Terrae Hinds ("Hinds") is presently detained and in the custody of the DOC. He has been in the custody of the DOC since on or about May 4, 2021, when he was arrested by the New York City Police Department ("NYPD") on charges including

murder in the second degree.  Since then, Hinds has been detained at and transferred between various facilities on Rikers Island.  As relevant to this search warrant, he was detained at the Anna M. Kross Center ("AMKC") at Rikers Island.   As set forth below, Hinds is a member of the BHB.

15.     Krystle Burrell ("CO Burrell") is a corrections officer with DOC since approximately June 2016.  During the time period relevant to this warrant, CO Burrell was a corrections officer at AMKC and, at relevant times, was assigned to the housing area where Hinds was incarcerated.

16.     Michael Ross ("Ross") is presently detained and in the custody of the DOC.  He has been in the custody of the DOC since on or about February 4, 2020, when he was arrested by the New York City Police Department ("NYPD") on charges including possession of a firearm.  Since then, Ross has been detained at and transferred between various facilities on Rikers Island.  As relevant to this search warrant, he was detained at the Robert N. Davoren Center ("RNDC") at Rikers Island.  As set forth below, Ross is a member of the BHB.

17.     Katrina Patterson ("CO Patterson") is a corrections officer with DOC since approximately June 2016.  During the time period relevant to this warrant, CO Patterson was a corrections officer at RNDC and, at relevant times, was assigned to the housing area where Ross was incarcerated.

IV.    The Instant Offenses

18.     As discussed above, members of the BHB continue to operate in furtherance of the enterprise even while incarcerated.  Recorded calls through Securus

from members of the BHB while at Rikers Island show that Hinds and Ross continue their participation in the enterprise. For example, on or about September 10, 2021, Hinds and another incarcerated individuals used the Securus system to call Shakcor Tucker, a non-incarcerated gang leader with the BHB. During the call, the three individuals discussed the BHB hierarchy on Rikers Island and the internal struggle for power over the enterprise on the island. During the call, Hinds expressed that he did not want Ross to gain additional power. As another example, DOC has located contraband narcotics on Ross or in his cell on multiple occasions. Financial records from Cash App[2] show that the two women who are the mothers of Ross' children have received payments from individuals associated with other BHB members incarcerated on Rikers Island. The subject lines for these transactions sometimes have the nicknames of other incarcerated BHB members at Rikers Island. In addition, numerous calls between Ross and one of the mothers of his children include discussion of payments the mother has sent and received on Cash App and confirmation to Ross that the mother received payments from various Cash App accounts. Based on my training and experience, and for the reasons discussed below, I believe these discussions reflect that Ross is getting paid for distributing contraband to other BHB members on Rikers Island.

19.     On or about March 22, 2021, in response to violence between incarcerated individuals, DOC's Special Search Team conducted a search of the housing unit where

---

[2] Cash App is a mobile payment service developed by Square, Inc. that allows users to transfer money to one another using a mobile phone app.

Ross was assigned at the RMDC.  DOC discovered in Ross' cell tobacco and five glass bottles of liquid, which field tested positive for K2.[3]  The search team also located Target Device 2 taped under the radiator in Ross' cell and seized the device.

20.     Without searching the device, DOI determined the IMEI number of Target Device 2.  Documents produced by Tracfone regarding the IMEI number of the device show that the phone number associated with the contraband phone is 929-263-9128 (the "-9128 Number").  These records also indicate that the -9128 Number communicated with the two mothers of Ross' children during the period when Ross was incarcerated at Rikers Island.

21.     Based on allegations of CO Patterson smuggling contraband into the jail, DOI subpoenaed Cash App records for Patterson.  Between approximately October 21, 2020 and April 9, 2021, CO Patterson received approximately $10,000 from the two mothers of Ross' children discussed above.  The subject line associated with some of the transaction was "Sparks," which is Ross' gang name with the BHB. (Ross also has "Sparks" tattooed on his body.)  Based on my training and experience, I believe this shows that CO Patterson is being paid by Ross through individuals associated with him in exchange for contraband or other benefits at Rikers Island.  In addition, between April 2021 to the present, Ross and Patterson have talked through the Securus phone system on numerous occasions, including discussing their romantic relationship and financial transactions on the Cash App.

---

[3] The DOC subsequently misplaced the seized narcotics.

22.     Video surveillance also indicates that CO Patterson has smuggled contraband for Ross. For example, on or about January 16, 2021, video surveillance in the common area at RNDC shows Patterson and Ross alone.  The video shows that they appear to have a conversation and then a bag is passed from CO Patterson to Ross.  CO Patterson then steps in front of Ross to block the camera's view of the bag and they both depart.  Additional videos show that CO Patterson has brought Ross packages on other occasions as well, including as recently as March 6, 2021.

23.     On or about July 22, 2021, law enforcement saw a video posted on Instagram of a BHB member incarcerated in the same housing unit as Hinds.  In examining the video, law enforcement determined that the video was taken inside a cell at AMKC and, accordingly, must have been taken from a contraband cell phone.  Within hours, on or about July 23, 2021, at 1:25 a.m., DOC Emergency Service Unit conducted a search of the housing area where Hinds and other BHB members are incarcerated. During the search, DOC did not find a cell phone in the cell of the person posting the video on Instagram, but instead found Target Device 1 in Hinds' cell, which is located one cell away from the BHB member who posted the video on Instagram.  DOC also recovered a cell phone charger during the search.

24.     During the same search, DOC found another cell phone in the unit's common area.  Because the phone was found in the common area and did not belong to a particular individual, DOC conducted a forensic examination of that phone the same day.  DOC determined that the cell phone found in the common area was previously used by CO Burrell.  As an initial matter, data visible on the phone indicated that it had

10

been paired with, or previously been connected to, "Krystle's AirPods," matching the first name of CO Burrell.  DOC also determined that CO Burrell had worked in that housing unit the previous night.  It appears that the user(s) of the phone had deleted messages as there were only limited communications on the phone.  However, the phone contained text messages between a seemingly incarcerated individual and CO Burrell. For example, in one message dated July 21, 2021, the user of the cell phone sent a text message to a phone number CO Burrell provided to the DOC in the course of her employment that stated, "you look mad good in that ponytail."  DOC also determined that CO Burrell had a ponytail at this time.

25.     Evidence developed during the course of the investigation indicates that Hinds and CO Burrell are in a romantic relationship.  Beginning shortly after his incarceration at Rikers Island, Hinds placed phone calls using the Securus system to CO Burrell.  During these recorded phone calls, both parties repeatedly expressed their love for each other, including discussing getting married.  In addition, based on a review of the voices on calls Hinds placed to certain unknown numbers, it appears Hinds is also calling CO Burrell on a burner phone, i.e., a phone not registered in her name.

26.     There is probable cause to believe CO Burrell also assisted Hinds in furthering narcotics activity.  On or about July 25, 2021, Hinds called CO Burrell on the Securus system and asked CO Burrell to transfer $100 via Zelle[4] to a certain phone number, which I believe is the phone number associated with narcotics sales at AMKC

---

[4] Zelle is a digital payment service via mobile phone application similar to Cash App.

based on another investigation.  In addition, during the call, Hinds states that he will be "f***d up" if she does not transfer it, which I believe means that he will not able to going to get high from narcotics and will be in a depressive mood if he does not get the money.

27.     On or about July 23, 2021, a DOI agent, assisted by myself, conducted a voluntary interview of CO Burrell.  The DOI agent told CO Burrell that she could leave at any time and that she could terminate the interview without any negative employment action being taken against her.  During the interview, CO Burrell stated, in sum and substance and in part, that she did smuggle a cell phone into AMKC, knowing that the phone was contraband and that she was not supposed to bring the phone in.  CO Burrell stated the phone was for a different individual in the housing unit, not for Hinds.  CO Burrell stated the phone was simply to allow the individual to have communication with his family.  She denied bringing a second phone into AMKC.  CO Burrell also admitted that she knew that a gang controlled that housing area at AMKC.  CO Burrell stated that she did not have a relationship with any of the incarcerated individuals outside knowing them from the housing unit.  Subsequently, the Department of Corrections suspended CO Burrell for 30 days, and she is currently on modified duty without access to her badge or firearm.  To date, it is unknown if CO Burrell received money or other benefits in exchange for bringing Hinds contraband or assisting him to continue his participation in the enterprise.

28.     Approximately five minutes after the interview concluded, CO Burrell received a call from Hinds through the Securus system.  During that phone call, CO

Burrell and Hinds continued their romantic conversations.  In addition, CO Burrell told Hinds that she received a visit from the "Alphabet," which I believe means the DOC.  In sum and substance, Hinds responded that there would not be an issue because he did not get in trouble (presumably for being found with the contraband cell phone).  To date, CO Burrell and Hinds continue to speak on the telephone in violation of DOC regulations.

29.     In my training and experience, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of DOI.[5]

## TECHNICAL TERMS

30.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless

---

[5] As discussed above, the Target Devices were seized in March 2021 and July 2021 respectively.  The incarcerated individuals who possessed these phones have no continuing possessory interest in the devices, to the extent they ever had one, because the phones constitute contraband and will never be returned to the individuals even at the conclusion of the investigation.  In addition, as discussed above, the seizure of the devices by DOC was reasonable as the devices were found during searches for contraband in a correctional facility, and the DOC has the authority to seize any contraband found in such a facility.

telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

14

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically

15

calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.   PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

31.     Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

32.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

33.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a

17

residence.

b.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

34.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

18

35.   *Manner of execution.*  Because this warrant seeks only permission to examine Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION AND REQUEST FOR SEALING

36.   I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

37.   It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation, the scope and focus of which is unknown to the targets and subjects of the investigation, including the individuals discussed herein. Based upon my training and experience, I have learned that individuals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other individuals as they deem appropriate, i.e., post them publicly online.  Accordingly, premature

disclosure of the contents of this affidavit and related documents may have a significant and

negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Dianna Oglio
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me by telephone
on October 1, 2021:

HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

The property to be searched is: (1) a Black LG Tracfone Mobile Telephone - FCC ID: ZNFL322DL – SERIAL NUMBER: GPLGL322DCG32B Vouchered Under New York City Department of Investigations Voucher Number PR21-149 ("Target Device 1"); and (2) a Black Samsung Mobile Telephone with IMEI: 356327116572253 Vouchered Under New York City Department of Investigations Voucher Number PR21-054 ("Target Device 2," collectively the "Target Devices.")

This warrant authorizes the forensic examination of the Target Devices for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.　　All records on the Target Devices described in Attachment A that relate to violations of 18 U.S.C. §§ 1962 and 1963 (racketeering); 18 U.S.C. § 1952(a)(3) (use of facilities in interstate commerce with intent to promote, manage, establish, carry on, or facilitate the promotion of narcotics distribution and bribe receiving); and/or 18 U.S.C. § 371 (conspiracy to violate the Travel Act) (the "Subject Offenses") have been committed, are being committed, and will be committed by Terrae Hinds, Krystle Burrell, Michael Ross, Katrina Patterson, and others (the "Subject Individuals"), from January 1, 2021 to the present, including:

　　a.　All records and communications related to the Subject Offenses including but not limited to, call record details, electronic mail, chat logs, and text and electronic messages evidencing communications between and among the Subject Individuals and known and unknown co-conspirators, including, but not limited to, communications regarding the bribing of corrections officials, the distribution of narcotics, the smuggling of contraband into correctional facilities, the Blood Hound Brims and other gang activity constituting racketeering;

　　b.　All records and information concerning the identity or location of co-conspirators and other participants in the Subject Offenses, including address books, names, lists of names, phone numbers and addresses of individuals suspected to have participated in the Subject Offenses;

　　c.　All images, videos, audio recordings and other recordings relating to the Subject Offenses;

　　d.　All evidence pertaining to the Subject Individuals' state of mind as it relates to the Subject Offenses under investigation, including evidence relating to their knowledge, involvement and/or participation in the Subject Offenses;

　　e.　Any information regarding the source and/or origin of the money being used to bribe corrections officers and/or purchase contraband in correctional facilities;

　　f.　All records and information related to the planning, coordination and commission of the Subject Offenses, including all geo-location data, internet

protocol connections, Global Positioning Satellite (GPS) entries, and other location entries, including Cell Tower and Wi-Fi entries, for the Subject Target as it relates to the Subject Offenses;

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the investigative agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A  BLACK LG TRACFONE MOBILE TELEPHONE - FCC ID: ZNFL322DL - SERIAL NUMBER:<br>GPLGL322DCG32B VOUCHERED UNDER NEW YORK CITY DEPARTMENT OF INVESTIGATIONS<br>VOUCHER NUMBER PR21-149 AND A BLACK SAMSUNG MOBILE TELEPHONE WITH IMEI:<br>356327116572253 VOUCHERED UNDER NEW YORK CITY DEPARTMENT OF INVESTIGATIONS<br>VOUCHER NUMBER PR21-054 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No.     21-MJ-1114 |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____Eastern_____ District of _____New York_____
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A (incorporated by reference).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B (incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before _____October 14, 2021_____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to _____the Duty Magistrate Judge_____ .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*  ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued:     10/1/21 at 2:05 p.m.                    *Lois Bloom*
                                                              *Judge's signature*

City and state:      Brooklyn, New York                  Hon. Lois Bloom                    U.S.M.J.
                                                              *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>   21-MJ-1114 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date:  _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## **ATTACHMENT A**

The property to be searched is: (1) a Black LG Tracfone Mobile Telephone - FCC ID: ZNFL322DL – SERIAL NUMBER: GPLGL322DCG32B Vouchered Under New York City Department of Investigations Voucher Number PR21-149 ("Target Device 1"); and (2) a Black Samsung Mobile Telephone with IMEI: 356327116572253 Vouchered Under New York City Department of Investigations Voucher Number PR21-054 ("Target Device 2," collectively the "Target Devices.")

This warrant authorizes the forensic examination of the Target Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Target Devices described in Attachment A that relate to

violations of 18 U.S.C. §§ 1962 and 1963 (racketeering); 18 U.S.C. § 1952(a)(3) (use of

facilities in interstate commerce with intent to promote, manage, establish, carry on, or

facilitate the promotion of narcotics distribution and bribe receiving); and/or 18 U.S.C. § 371

(conspiracy to violate the Travel Act) (the "Subject Offenses") have been committed, are

being committed, and will be committed by Terrae Hinds, Krystle Burrell, Michael Ross,

Katrina Patterson, and others (the "Subject Individuals"), from January 1, 2021 to the

present, including:

        a.   All records and communications related to the Subject Offenses including but not limited to, call record details, electronic mail, chat logs, and text and electronic messages evidencing communications between and among the Subject Individuals and known and unknown co-conspirators, including, but not limited to, communications regarding the bribing of corrections officials, the distribution of narcotics, the smuggling of contraband into correctional facilities, the Blood Hound Brims and other gang activity constituting racketeering;

        b.   All records and information concerning the identity or location of co-conspirators and other participants in the Subject Offenses, including address books, names, lists of names, phone numbers and addresses of individuals suspected to have participated in the Subject Offenses;

        c.   All images, videos, audio recordings and other recordings relating to the Subject Offenses;

        d.   All evidence pertaining to the Subject Individuals' state of mind as it relates to the Subject Offenses under investigation, including evidence relating to their knowledge, involvement and/or participation in the Subject Offenses;

        e.   Any information regarding the source and/or origin of the money being used to bribe corrections officers and/or purchase contraband in correctional facilities;

        f.   All records and information related to the planning, coordination and commission of the Subject Offenses, including all geo-location data, internet

protocol connections, Global Positioning Satellite (GPS) entries, and other location entries, including Cell Tower and Wi-Fi entries, for the Subject Target as it relates to the Subject Offenses;

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4.      This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the investigative agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.